# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| **THE MEDICAL SOCIETY OF VIRGINIA,**<br><br>      **Plaintiff,**<br><br>  v.<br><br>**SAFE HAVEN BEHAVIORAL HEALTH & WELLNESS, LLC; SAFE HAVEN E-BEHAVIORAL HEALTH, LLC; SAFE HAVEN BEHAVIORAL HEALTH, LLC; and GIOVANNI PASCAL PIERRE,**<br><br>      **Defendants.** | No. 3:24-CV-311 |

## COMPLAINT

Plaintiff The Medical Society of Virginia ("MSV"), through counsel, complains of the acts of Defendants and alleges and says as follows:

### NATURE OF THE ACTION

1. MSV brings this action for trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, arising from the unlawful conduct of Defendants in knowingly and intentionally adopting and using trademarks that are identical or confusingly similar to MSV's SAFEHAVEN® registered trademark.

### PARTIES

2. MSV is a nonstock corporation organized and existing under the laws of the Commonwealth of Virginia. MSV's principal place of business is in Henrico County, Virginia.

1

3. Defendant Safe Haven E-Behavioral Health, LLC ("SHEBH") is a limited liability company organized and existing under the laws of Colorado and has its principal office in Colorado.

4. Defendant Safe Haven Behavioral Health & Wellness, LLC ("SHBHW") is a limited liability company organized and existing under the laws of Florida and Wyoming and has its principal place of business in Florida or Wyoming.

5. Defendant Safe Haven Behavioral Health, LLC ("SHBH") is a limited liability company organized and existing under the laws of Florida and has its principal place of business in Florida.

6. Upon information and belief, Defendant Pierre is a citizen and resident of Florida. Upon information and belief, Defendant Pierre is a founder, member, and/or manager of each of SHEBH, SHBHW, and SHBH

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because MSV's claims arise under the Lanham Act.

8. This Court has personal jurisdiction over Defendants, and venue is proper in this Court under 28 U.S.C. § 1391(b).

**MSV'S BUSINESS AND TRADEMARK RIGHTS**

9. MSV is a nonstock and not-for-profit corporation headquartered in metropolitan Richmond, Virginia. Founded in 1820 and continuously existing since then, MSV is the only statewide physician membership organization in Virginia without regard to practice specialty or geographic location. MSV has more than 10,000 physicians and physician assistant members.

10. MSV is the owner of the federally registered SAFEHAVEN® trademark (the "SAFEHAVEN® Mark"), which appears on the Principal Register of the United States Patent and Trademark Office ("USPTO"), U.S. Reg. No. 6640109, for goods and services within the category of "Charitable services, namely, providing health care services in the nature of wellness programs to physicians and physician assistants."

11. MSV applied to register the SAFEHAVEN® Mark on May 19, 2020 on a intent-to-use ("ITU") basis under Section 1(b) of the Lanham Act, 15 U.S.C. § 1051(b).

12. The USPTO registered MSV's SAFEHAVEN® Mark on February 8, 2022. However, by operation of federal law, upon registration of the SAFEHAVEN® Mark, MSV acquired priority over all competing uses of the SAFEHAVEN® Mark dating from May 19, 2020, the ITU application date.

13. MSV applied to register the SAFEHAVEN® Mark for use in connection with its SafeHaven program, which MSV created in 2020 to address career fatigue and behavioral health issues among physicians and physician assistants. MSV has since expanded the SafeHaven program to include other health care professionals, such as nurses, pharmacists, and students in medical, nursing, physician assistant, and pharmacy schools.

14. MSV's SafeHaven program using the SAFEHAVEN® Mark comprises a comprehensive set of well-being resources for health care practitioners. The program offers in-person and virtual counseling assistance

for mental and emotional health, including support for stress, anxiety, and burnout and family and personal relationship issues. Staffed by senior-level behavioral health professionals, counseling assistance is available 24 hours a day, seven days a week. The program also offers professional support to cope with workplace stress, adverse events, and medical malpractice litigation, including a robust peer coaching program, leadership development, and Worklife Concierge, a virtual assistant. The program further provides online resources through the Worklife app.

15. Although MSV's clientele for SafeHaven is primarily located within Virginia at the moment, SafeHaven is presently available or will be coming available to clients in at least 14 states, including through affiliations with the American Society of Clinical Oncology (a nationwide organization of approximately 50,000 members, the Michigan State Medical Society (with more than 15,000 members), and the Minnesota Medical Association (with more than 10,000 members). MSV intends to expand the SafeHaven program to additional states and additional professional affiliates.

16. MSV has invested significant sums in advertising and promoting the SAFEHAVEN® Mark, including through MSV's own website, Facebook, LinkedIn, X, lnstagram, YouTube, publications of the American Medical Association, WebMD, medical society magazines, and local television in Virginia and Michigan.

4

17. MSV has invested considerable effort and money in advertising, promoting, and educating actual and potential clients about the behavioral health services offered under the SAFEHAVEN® Mark, and in carefully controlling the nature and quality of the products and services offered under its SAFEHAVEN® Mark.

18. In addition, MSV has invested significant time and expense under its SAFEHAVEN® Mark to lobby state legislatures to enact legislation to protect the confidentiality of communications made by participating physicians in the SAFEHAVEN® program, which is a key feature of SAFEHAVEN®. For example, in 2020, the Virginia General Assembly passed first-of-its-kind legislation to expand the statutory peer review privilege to include communications made to and from a professional program to address issues related to career fatigue and wellness in health care professionals, as well as to exclude such communications from mandatory reporting to state licensing boards except in certain high-danger situations. Since then, MSV and its affiliates have obtained various legislative protections for SAFEHAVEN® in Michigan, Illinois, Kentucky, South Dakota, Minnesota, Delaware, Nebraska, Indiana, Arizona, and Georgia.

**DEFENDANTS AND THEIR INFRINGEMENT**

19. Defendant Pierre is a nurse practitioner and is or has in the past been a registered nurse. Defendant Pierre is licensed to practice in Florida, Maryland, Colorado, Virginia, and possibly other states.

20.	Since 2021, Defendant Pierre has formed multiple entities using the mark "Safe Haven" in the corporate name.

21.	Defendant Pierre formed Defendant SHEBH in Colorado on December 30, 2021.

22.	Defendant Pierre formed Defendant SHBHW in Wyoming on August 15, 2022 and in Florida on October 27, 2022.

23.	Defendant Pierre formed Defendant SHBH in Florida on November 10, 2022.

24.	Each of these entities contains a "Safe Haven" mark within its name.

25.	Each of these entities was formed more than one year after MSV's priority registration date for the SAFEHAVEN® Mark.

26.	Defendant Pierre, through his various entity Defendants, is a serially unsuccessful trademark applicant.

27.	On May 3, 2022, Defendant SHEBH filed an application, Serial No. 97392683, for the mark SAFE HAVEN EBEHAVIORAL HEALTH for services described as "Medication management, namely, medication counseling; virtual healthcare, namely, psychotherapy services via the internet." Defendant Pierre signed the application, listing his position as "CEO" of Defendant SHEBH. On February 23, 2023, the USPTO issued a non-final Office Action refusing to register the mark. Defendants SHEBH and Pierre did not respond to the Office Action, and the USPTO issued a notice of abandonment on June 9, 2023.

28.     On November 14, 2022, Defendant SHBHW (using its Florida address) filed an application, Serial No. 97676753, for the mark SAFE HAVEN INTEGRATIVE HEALTH for services described as "mental health medication management, coaching, psychiatry, weight loss, nutrition counseling." Defendant Pierre signed the application, listing his capacity as "CEO" of Defendant SHBHW. On December 7, 2023, the USPTO issued a non-final Office Action refusing to register the mark for several reasons, including due to likelihood of confusion with MSV's SAFEHAVEN® Mark. Defendants SHBHW and Pierre did not respond to the Office Action, and the USPTO issued a Notice of Abandonment on March 22, 2024.

29.     On November 16, 2022, Defendant SHBHW (using its Florida address) filed an application, Serial No. 97680239, for the mark SAFE HAVEN BEHAVIORAL HEALTH for services described as "Mental health services, namely, medication management." Defendant Pierre signed the application, listing his title as "Principal" of SHBHW. On August 30, 2023, the USPTO issued a non-final Office Action refusing to register the mark. Defendants SHBHW and Pierre did not respond to the Office Action, and the USPTO issued a Notice of Abandonment on December 15, 2023.

30.     On November 17, 2022, Defendant Pierre signed an application, Serial No. 97682871, as "Principal" of Safe Haven Integrative Health, LLC, seeking to register the mark SAFE HAVEN INTEGRATIVE HEALTH LLC for services described as "Mental health consultations, medication management services,

7

therapy and coaching services." On August 30, 2023, the USPTO issued a non-final Office Action refusing to register the mark for several reasons, including likelihood of confusion with MSV's SAFEHAVEN® Mark. Defendant Pierre and Safe Haven Integrative Health, LLC did not respond to the Office Action, and the USPTO issued a Notice of Abandonment on December 14, 2023. Upon information and belief, Safe Haven Integrative Health, LLC is not presently active as an entity, and is currently in administrative dissolution.

31. On December 22, 2022, Defendant SHBH filed an application, Serial No. 97729570, for the mark SAFE HAVEN HEALTH for services described as "Medical treatment services; Mental health services; Behavioral health services; Managed mental health care services." Defendant Pierre signed the application, listing his title as "Principal" of SHBH. On October 7, 2023, the USPTO issued a non-final Office Action refusing to register the mark for various reasons, including a likelihood of confusion with MSV's SAFEHAVEN® Mark. On December 3, 2023, SHBH, through counsel, submitted a response to the Office Action. On January 2, 2024, the USPTO issued a letter suspending SHBH's application based on three other pending applications, and further stated that SHBH's arguments against the likelihood of confusion with MSV's SAFEHAVEN® Mark were "unpersuasive."

32. In each of these applications, Defendant Pierre and the entity Defendant applying for the registration represented to the USPTO that the applicant's first use of the mark in commerce was a date after the May 19, 2020 priority date of MSV's SAFEHAVEN® Mark.

8

33. Defendants each continue to use their Safe Haven marks in one or more channels in commerce.

34. For example, Defendant Pierre lists his current occupation on LinkedIn as "Founder & Owner" of "Safe Haven Health" from July 2021 to the present. In doing so, Defendant Pierre does not differentiate between or among the five or more entities he formed using the Safe Haven marks, and uses the Safe Haven marks interchangeably for the benefit of all of his businesses together.

35. By clicking on "Safe Haven Health" on Defendant Pierre's LinkedIn profile, a user is connected to a LinkedIn profile for "Safe Haven Health." That LinkedIn profile likewise does not differentiate between or among the various entities that Defendant Pierre formed and operates using the Safe Haven marks.

36. The LinkedIn profile for "Safe Haven Health" provides the following description:

> Safe Haven Health is a virtual mental health clinic aiming to increase access to effective and efficient mental healthcare from the comfort of your home. Safe Haven addresses several mental health concerns, including ADHD, depression, bipolar disorder, and anxiety.
>
> We serve Maryland, Colorado, Florida, Vermont, Tennessee, Virginia, Oregon, Connecticut, and Delaware residents.

The "Safe Haven Health" LinkedIn profile lists a website with a URL of http://www.safehavenhealth.co.

37. The safehavenhealth.co website, in turn, advertises services including "Virtual Mental Health Appointments" and "Mental Healthcare From The Comfort of Your Home."

38. The safehavenhealth.co website further indicates that the company is "Trusted by hundreds of clients nationwide," with services available in Virginia, Florida, Maryland, Colorado, Connecticut, Delaware, Oregon, Vermont, and New Mexico.

39. The "Mission" page of the safehaven.co website, http://www.safehavenhealth.co/mission/, further advertises virtual mental health services:

> Everyone deserves access to effective, efficient, and nonjudgmental mental healthcare, but commuting, scheduling, and financial standing are barriers to accessibility. We've tailored our expert services to an easy-to-use platform that gives individuals access to empathetic and efficient care from their homes.

40. The safehavenhealth.co website also contains a blog, which includes posts authored by Defendant Pierre.

41. Defendant Pierre and the entity Defendants previously utilized the Safe Haven marks on a website with the URL http://www.safehavenhealth.life. The safehavenhealth.life website generally contained content similar to the content of the safeheavenhealth.co website, including the pervasive use of the Safe Haven marks. Although the safehavenhealth.life website now contains a splash page directing visitors to visit the newer safehavenhealth.co website, the safehavenhealth.life website is still active and accessible, including the pervasive use of the Safe Haven marks.

42. The safehavenhealth.life website advertises services for residents of Virginia, Maryland, Colorado, Connecticut, Florida, Vermont, Oregon, and Delaware.

43. The safehavenhealth.life website lists a contact address of 7901 4th St. N., Suite 300, St. Petersburg, Florida 33702. That address is listed with the Florida Division of Corporations as the principal address and mailing address of Defendant SHBHW as well as the principal address and mailing address of Defendant SHBH.

44. Defendant Pierre and the entity Defendants previously utilized the Safe Haven marks on a website with the URL http://www.safehavenbhw.com. The safehavenbhw.com website generally contained content similar to the content of the safeheavenhealth.co website, including the pervasive use of the Safe Haven marks. Although the safehavenbhw.com website now contains a splash page directing visitors to visit the newer safehavenhealth.co website, the safehavenbhw.com website is still active and accessible, including the pervasive use of the Safe Haven marks.

45. The safehavenbhw.com website advertises services for residents of Virginia, Maryland, Colorado, Connecticut, Florida, Vermont, Oregon, and Delaware.

46. The safehavenbhw.com website lists a contact address of 7901 4th St. N., Suite 300, St. Petersburg, Florida 33702. That address is listed with the Florida Division of Corporations as the principal address and mailing address of Defendant SHBHW as well as the principal address and mailing address of Defendant SHBH.

47. Upon information and belief, Defendant Pierre and the entity defendants previously used the Safe Haven marks on a website with the URL http://safehavenebh.com. Although the safehavenebh.com website is no longer operational (and redirects to a website advertising an online lottery in a language believed to be Indonesian), the previous content of the safehavenebh.com website is captured by and remains accessible through the Internet Archive, commonly known as the "Wayback Machine."

48. According to the Wayback Machine, the safehavenebh.com website belonging to Defendants contained Defendants' content, including the pervasive use of the Safe Haven marks, through at least December 5, 2023.

49. During its existence under the control of Defendants, the safehavenebh.com website generally contained content similar to the content of the safehavenhealth.co website, including the pervasive use of the Safe Haven marks.

50. During at least some time during the existence of the safehavenebh.com website, the website listed the specific entity as Defendant SHEBH, using the address of 1312 17th St. #1322, Denver, Colorado 80202. According to records of the Colorado Secretary of State, that address was listed in Defendant SHEBH's articles of organization as Defendant SHEBH's principal address.

51. One or more other pages within the same historical safehavenebh.com website listed the entity as Defendant SHBHW and/or listed the company address as 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801. According to

records of the Wyoming Secretary of State, that address is listed as both the principal office address and the mailing address for Defendant SHEBH as well as the principal office address and the mailing address for Defendant SHBHW.

52. The safehavenebh.com website advertised and offered services to clients in Virginia, Maryland, Colorado, Florida, Vermont, and Delaware.

53. Defendants' ongoing infringement through the Safe Haven marks threatens the value of MSV's SAFEHAVEN® Mark by offering overlapping mental health services through virtual channels in a manner likely to cause confusion among consumers.

54. Moreover, a significant part of Defendants' advertising concerns therapy involving the drug ketamine, which is a Schedule III substance under the Controlled Substances Act. Ketamine is a dissociative anesthetic originally applied in veterinary medicine, though later approved for use in humans. Ketamine can induce a state of sedation, immobility, relief from pain, and amnesia through proper therapeutic uses. However, ketamine has a negative public connotation among consumers because it is abused by recreational users for its ability to produce dissociative sensations and hallucinations. Ketamine also has a negative public connotation among consumers because it has been used as a "club drug" to facilitate sexual assault.

55. Through the use of the Safe Haven marks in connection with Defendants' services, including ketamine therapy, Defendants threaten the value of MSV's SAFEHAVEN® Mark by confusingly associating MSV's services with a

stigmatized controlled substance abused by recreational users and used to facilitate sexual assault.

56. Defendants' use of the Safe Haven marks further harms the value of MSV's SAFEHAVEN® Mark through the use and promotion of false statements referring to Defendant Pierre as "Dr. Pierre." Upon information and belief, Defendant Pierre is not and has never been a medical doctor or a doctor of osteopathy. Online reviews of Defendants complain about Defendants misleadingly referring to Defendant Pierre as "Dr. Pierre." The use of false statements in the course of offering Defendants' services through their confusingly similar Safe Haven marks threatens a connotation by association between those false statements and MSV's SAFEHAVEN® Mark.

57. On March 5, 2024, MSV, through counsel, wrote to each Defendant demanding that Defendants cease and desist their continued infringement of MSV's SAFEHAVEN® Mark. To date, Defendants have not responded to this letter, and Defendants continue their ongoing infringement of MSV's SAFEHAVEN® Mark.

**CLAIM FOR RELIEF**
**(Trademark Infringement)**

58. MSV restates and incorporates by reference the allegations of all preceding paragraphs.

59. Defendants use their Safe Haven marks in commerce.

60. Defendants' use of Safe Haven marks for services similar to those marketed under MSV's SAFEHAVEN® Mark is likely to cause confusion, mistake, and deception among the general purchasing public about whether the parties or

their services designated by the respective marks are the same or are somehow authorized, sponsored, or approved by or associated or affiliated with each other.

61. Defendants' continuing unauthorized and unlicensed use of confusingly similar Safe Haven marks constitutes trademark infringement of the federally registered SAFEHAVEN® Mark in violation of 15 U.S.C. § 1114.

62. Defendant Pierre controls the infringing activity and stands to benefit from the continued infringement. As a member and manager of the entity Defendants, Pierre is personally liable for the tortious conduct committed by them, though committed primarily for the benefit of the entity Defendants. *See Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 149 (4th Cir. 1987).

63. As a result of Defendants' actions, MSV has and will continue to suffer injury. MSV has no adequate remedy at law, and unless Defendants are enjoined by this Court, Defendants will continue to willfully violate the SAFEHAVEN® Mark, causing injury to MSV. MSV demands all relief under the Lanham Act, including permanent injunctive relief, damages, and attorneys' fees.

WHEREFORE, MSV prays the Court:

a. Adjudge that Defendants' use of the Safe Haven Marks infringes MSV's trademark;

b. Enter a permanent injunction enjoining Defendants, their employees and affiliates, and any respective agents, partners, officers, directors, members, managers, shareholders, principals, subsidiaries, and all persons in active concert or participation with any of them, from (a)

        selling, offering for sale, advertising, promoting, distributing, marketing, or exploiting in any other way the Safe Haven marks or any other mark confusingly similar to MSV's SAFEHAVEN® Mark in connection with wellness and mental health services; and (b) committing any other act calculated or likely to cause the public to believe that Defendants and MSV are in any manner connected, affiliated or associated with one another or otherwise competing unfairly with MSV;

c. Order pursuant to 15 U.S.C. § 1116(a) that Defendants file with the Court and serve upon MSV, within thirty (30) days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which Defendants have complied with the provisions set forth in paragraph (b) above;

d. Order Defendants to transfer to MSV the www.safehaven.co, www.safehavenhealth.life, and www.safehavenbhw.com domain names, and any other domain names incorporating elements confusingly similar to MSV's SAFEHAVEN® Mark;

e. Order pursuant to 15 U.S.C. § 1118 that Defendants destroy all labels, signs, prints, packages, and advertisements that bear the Safe Haven marks, and all means of making the same;

f. Order pursuant to 15 U.S.C. § 1117(a) that Defendants account for and pay to MSV any and all profits arising from the use of Defendants' Safe Haven marks;

g. Award damages to MSV in an amount to be determined at trial, including compensatory, punitive, and treble damages, together with pre-judgment and post-judgment interest;

h. Award MSV its reasonable attorneys' fees, expenses, and costs incurred in this action in accordance with 15 U.S.C. § 1117(a); and

i. Grant MSV such other and further relief as the Court deems just and proper.

Respectfully submitted this 1st day of May, 2024.

/s/ John S. Buford
John S. Buford (VSB #89041)
HANCOCK, DANIEL & JOHNSON, P.C.
4701 Cox Rd., Suite 400
Glen Allen, VA 23060
Tel.:   804-967-9604
Fax:   804-967-9888
jbuford@hancockdaniel.com
*Attorneys for The Medical Society of Virginia*