IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

THE MEDICAL SOCIETY OF VIRGINIA,

      Plaintiff,

    v.

                               Civil Action No. 3:24cv311

SAFE HAVEN BEHAVIORAL HEALTH &
WELLNESS, LLC, *et al.,*

      Defendants.

### MEMORANDUM OPINION

This matter comes before the Court on Plaintiff the Medical Society of Virginia's Motion

for Default Judgment (the "Motion"). (ECF No. 21). For the reasons that follow, the Court

will grant the Motion.

### I.  Factual and Procedural Background

**A.  Factual Background[1]**

The Medical Society of Virginia ("MSV") is a "statewide physician membership

organization" with "more than 10,000 physicians and physician assistant members." (ECF No.

1 ¶ 9.) It is "a nonstock corporation organized and existing under the laws of the

Commonwealth of Virginia", with its "principal place of business [] in Henrico County,

Virginia." (ECF No. 1 ¶ 2.) "Defendant Safe Haven E-Behavioral Health, LLC ('SHEBH') is

a limited liability company organized and existing under the laws of Colorado [with] its principal

office in Colorado." (ECF No. 1 ¶ 3.) "Defendant Safe Haven Behavioral Health & Wellness,

---

[1] All of the following facts are drawn from MSV's Complaint, Motion, and all attached
documents submitted with those filings, as Defendants have not responded to the Complaint.
*See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (requiring a court
considering a default motion to determine whether a plaintiff's well-pleaded allegations support
the relief sought).

LLC ('SHBHW') is a limited liability company organized and existing under the laws of Florida and Wyoming [with] its principal place of business in Florida or Wyoming."   (ECF No. 1 ¶ 4.) "Defendant Safe Haven Behavioral Health, LLC ('SHBH') is a limited liability company organized and existing under the laws of Florida [with] its principal place of business in Florida." (ECF No. 1 ¶ 5.)   Defendant Giovanni Pascal Pierre "is a nurse practitioner and is or has in the past been a registered nurse . . . licensed to practice in Florida, Maryland, Colorado, Virginia, and possibly other states."   (ECF No. 1 ¶ 19.)   "Defendant Pierre is a citizen and resident of Florida" and "a founder, member, and/or manager of each of SHEBH, SHBHW, and SHBH." (ECF No. 1 ¶ 6.)

1.   **The Trademark at Issue**

MSV owns "the federally registered SAFEHAVEN® trademark" "which appears on the Principal Register of the United States Patent and Trademark Office ('USPTO'), U.S. Reg. No. 6640109, for goods and services within the category of 'Charitable services, namely, providing health care services in the nature of wellness programs to physicians and physician assistants.'" (ECF No. 1 ¶ 10.)   On May 19, 2020, "MSV applied to register the SAFEHAVEN® Mark" "on a[n] intent-to-use ('ITU') basis" under 15 U.S.C. § 1051(b).   (ECF No. 1 ¶ 11.)   On February 8, 2022, the USPTO registered MSV's SAFEHAVEN® trademark.   (ECF No. 1 ¶ 12.)

"MSV applied to register the SAFEHAVEN® Mark for use in connection with its SafeHaven program, which [it] created in 2020 to address career fatigue and behavioral health issues among physicians and physician assistants."   (ECF No. 1 ¶ 13.)   "Although MSV's clientele for SafeHaven is primarily located within Virginia . . . SafeHaven is presently available or will be coming available to clients in at least 14 states."   (ECF No. 1 ¶ 15.)   "MSV has invested significant sums in advertising and promoting the SAFEHAVEN® Mark, including

through [its] website, Facebook, LinkedIn, X, Instagram, YouTube, publications of the American Medical Association, WebMD, medical society magazines, and local television in Virginia and Michigan." (ECF No. 1 ¶ 16.) MSV has "invested considerable effort and money . . . in carefully controlling the nature and quality of the products and services offered under its SAFEHAVEN® Mark." (ECF No. 1 ¶ 17.)

**2.** **Defendants Unsuccessfully File Applications for Trademarks Containing the Phrase "Safe Haven" At Least Four Times**

"Since 2021", Mr. Pierre "has formed multiple entities using the mark 'Safe Haven' in the corporate name." (ECF No. 1 ¶ 20.) On December 30, 2021, Mr. Pierre formed Safe Haven E-Behavioral Health, LLC ("SHEBH"). (ECF No. 1 ¶ 21.) On October 27, 2022, Mr. Pierre formed Safe Haven Behavioral Health & Wellness, LLC ("SHBHW"). (ECF No. 1 ¶ 22.) On November 10, 2022, Mr. Pierre formed Safe Haven Behavioral Health, LLC ("SHBH"). (ECF No. 1 ¶ 23.) "Each of these entities contains a 'Safe Haven' mark within its name" and each entity "was formed more than one year after MSV's priority registration date for the SAFEHAVEN® [trademark]." (ECF No. 1 ¶¶ 24–25.)

"On May 3, 2022, Defendant SHEBH filed an application, Serial No. 97392683, for the mark SAFE HAVEN BEHAVIORAL HEALTH", signed by Mr. Pierre, who was listed as the "CEO" of SHEBH. (ECF No. 1 ¶ 27.) "On February 23, 2023, the USPTO issued a non-final Office Action refusing to register the mark." (ECF No. 1 ¶ 27.) "Defendants SHEBH and [Mr.] Pierre did not respond to the Office Action, and the USPTO issued a notice of abandonment on June 9, 2023." (ECF No. 1 ¶ 27.)

"On November 14, 2022, Defendant SHBHW . . . filed an application, Serial No. 97676753, for the mark SAFE HAVEN INTEGRATIVE HEALTH", signed by Mr. Pierre, who was listed as the "CEO" of SHBHW. (ECF No. 1 ¶ 28.) "On December 7, 2023, the USPTO

3

Case 3:24-cv-00311-MHL   Document 23   Filed 07/08/25   Page 4 of 26 PageID# 100

issued a non-final Office Action refusing to register the mark for several reasons, including due to likelihood of confusion with MSV's SAFEHAVEN® Mark." (ECF No. 1 ¶ 28.) "Defendants SHBHW and [Mr.] Pierre did not respond to the Office Action, and the USPTO issued a Notice of Abandonment on March 22, 2024." (ECF No. 1 ¶ 28.) "On November 16, 2022, Defendant SHBHW . . . filed an application, Serial No. 97680239, for the mark SAFE HAVEN BEHAVIORAL HEALTH", signed by Mr. Pierre, who was listed as "Principal" of SHBHW. (ECF No. 1 ¶ 29.) "On August 30, 2023, the USPTO issued a non-final Office Action refusing to register the mark", "SHBHW and [Mr.] Pierre did not respond", "and the USPTO issued a Notice of Abandonment on December 15, 2023." (ECF No. 1 ¶ 29.)

"On November 17, 2022, Defendant Pierre signed an application, Serial No. 97682871, as 'Principal' of Safe Haven Integrative Health, LLC, seeking to register the mark SAFE HAVEN INTEGRATIVE HEALTH LLC." (ECF No. 1 ¶ 30.) "On August 30, 2023, the USPTO issued a non-final Office Action refusing to register the mark for several reasons, including likelihood of confusion with MSV's SAFEHAVEN® Mark." (ECF No. 1 ¶ 30.) Neither Mr. Pierre nor Safe Haven Integrative Health, LLC responded to the Office Action, "and the USPTO issued a Notice of Abandonment on December 14, 2023."[2] (ECF No. 1 ¶ 30.)

"On December 22, 2022, Defendant SHBH filed an application, Serial No. 97729570, for the mark SAFE HAVEN HEALTH", signed by Mr. Pierre, who was listed as "Principal" of SHBH. (ECF No. 1 ¶ 31.) "On October 7, 2023, the USPTO issued a non-final Office Action refusing to register the mark for various reasons, including a likelihood of confusion with MSV's SAFEHAVEN® Mark." (ECF No. 1 ¶ 31.) "On December 3, 2023, SHBH, through counsel,

---

[2] MSV states that "[u]pon information and belief, Safe Haven Integrative Health, LLC is not presently active as an entity, and is currently in administrative dissolution." (ECF No. 1 ¶ 30.)

submitted a response to the Office Action." (ECF No. 1 ¶ 31.) "On January 2, 2024, the USPTO issued a letter suspending SHBH's application based on three other pending applications, and further stated that SHBH's arguments against the likelihood of confusion with MSV's SAFEHAVEN® Mark were 'unpersuasive.'" (ECF No. 1 ¶ 31.)

"In each of these applications, Defendants Pierre and the entity [] applying for the registration represented to the USPTO that the applicant's first use of the mark in commerce was a date after the May 19, 2020 priority date of MSV's SAFEHAVEN® Mark." (ECF No. 1 ¶ 32.)

### 3.   The Infringement

"Defendants each continue to use their Safe Haven marks in one or more channels in commerce." (ECF No. 1 ¶ 33.) "Defendants' ongoing infringement through the Safe Haven marks threatens the value of MSV's SAFEHAVEN® Mark by offering overlapping mental health services through virtual channels in a manner likely to cause confusion among consumers." (ECF No. 1 ¶ 53.)

"Defendant Pierre lists his current occupation on LinkedIn as 'Founder & Owner' of 'Safe Haven Health' from July 2021 to the present." (ECF No. 1 ¶ 34.) "[Mr.] Pierre does not differentiate between or among the five or more entities he formed using the Safe Haven marks, and uses the Safe Haven marks interchangeably for the benefit of all his businesses together." (ECF No. 1 ¶ 34.) Mr. Pierre's LinkedIn profile links to a LinkedIn profile for "Safe Haven Health", which contains the following description:

> Safe Haven Health is a virtual mental health clinic aiming to increase access to effective and efficient mental healthcare from the comfort of your home. Safe Haven addresses several mental health concerns, including ADHD, depression, bipolar disorder, and anxiety.

5

> We serve Maryland, Colorado, Florida, Vermont, Tennessee, Virginia, Oregon, Connecticut, and Delaware residents.

(ECF No. 1 ¶¶ 35–36.)  "The 'Safe Haven Health' LinkedIn profile lists a website with a URL of http://www.safehavenhealth.co", which "advertises services including 'Virtual Mental Health Appointments' and 'Mental Healthcare From The Comfort of Your Home.'"  (ECF No. 1 ¶¶ 36–37.)  It "further indicates that the company is 'Trusted by hundreds of clients nationwide,' with services available in Virginia, Florida, Maryland, Colorado, Connecticut, Delaware, Oregon, Vermont, and New Mexico" and "contains a blog, which includes posts authored by Defendant Pierre."  (ECF No. 1 ¶¶ 38, 40.)

"Defendant Pierre and the entity Defendants previously utilized the Safe Haven marks" on other websites, including http://www.safehavenhealth.life and http://www.safehavenbhw.com, and http://safehavenebh.com.  (ECF No. 1 ¶¶ 41, 44, 47.) These websites "generally contained content similar to the content of the safehavenhealth.co website, including the pervasive use of the Safe Haven marks."  (ECF No. 1 ¶¶ 41, 44, 49.) Both the safehavenhealth.life website and the safehavenbhw.com website list "a contact address of 7901 4th St. N., Suite 300, St. Petersburg, Florida 33702", which "is listed with the Florida Division of Corporations as the principal address and mailing address of" SHBHW and SHBH. (ECF No. 1 ¶ 43.)  "During at least some time during the existence of the safehavenbh.com website, the website listed the specific entity as Defendant SHEBH."  (ECF No. 1 ¶ 50.)

In addition to the potential for consumer confusion, Defendants' "use of the Safe Haven marks in connection with Defendants' services, including ketamine therapy . . . threaten[s] the value of MSV's SAFEHAVEN® Mark by confusingly associated MSV's services with a stigmatized controlled substance."  (ECF No. 1 ¶ 53, 55.)  "[A] significant part of Defendants' advertising concerns therapy involving the drug ketamine, which is a Schedule III substance

under the Controlled Substances Act."  (ECF No. 1 ¶ 54.)  Further, "Defendants' use of the

Safe Haven marks further harms the value of MSV's SAFEHAVEN® Mark through the use and

promotion of false statements referring to Defendant Pierre as 'Dr. Pierre.'"  (ECF No. 1 ¶ 56.)

"Online reviews of Defendants complain about Defendants misleadingly referring to Defendant

Pierre as 'Dr. Pierre.'"  (ECF No. 1 ¶ 56.)

### 4.    Pre-Filing Communication

"On March 5, 2024, MSV, through counsel, wrote to each Defendant demanding that

Defendants cease and desist their continued infringement of MSV's SAFEHAVEN® Mark."

(ECF No. 1 ¶ 57.)  Defendants did not respond to these communications and "continue their

ongoing infringement."  (ECF No. 1 ¶ 57.)

### B.    Procedural Background

On May 1, 2024, MSV filed a one-count Complaint stating trademark infringement

against Defendants.  (ECF No. 1, at 14–15.)  In the Complaint, MSV seeks damages and

injunctive relief based on Defendants' unauthorized use of MSV's trademark.  (ECF No. 1, at

15–17.)  Specifically, MSV requests the following relief in its Complaint:

- a declaration of infringement;
- a permanent injunction;
- an "[o]rder pursuant to 15 U.S.C. § 1116(a) that Defendants file with the Court and serve upon MSV, within thirty (30) days after the entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which Defendants have complied with [the injunction]";
- an order that Defendants "transfer to MSV the domain names of www.safehaven.co, www.safehavenhealth.life, and www.safehavenbhw . . . and any other domain names incorporating elements confusingly similar to MSV's SAFEHAVEN® Mark";
- an "[o]rder pursuant to 15 U.S.C. § 1118 that Defendants destroy all labels, prints, packages, and advertisements that bear the Safe Haven marks, and all means of making the same";
- an "[o]rder pursuant to 15 U.S.C. § 1117(a) that Defendants account for and pay to MSV any and all profits arising from the use of Defendants' Safe Haven marks";

7

- compensatory, punitive, and treble damages;
- pre-judgment and post-judgment interest;
- reasonable attorneys' fees, expenses, and costs in accordance with 15 U.S.C.
  § 1117(a).

(ECF No. 1, at 15–17.)

On June 5, 2024, MSV returned:   (1) SHBHW's executed summons to the Court

reflecting a service date of May 15, 2024, (ECF No. 9, at 1); (2) SHEBH's executed summons to

the Court reflecting a service date of May 22, 2024, (ECF No. 10, at 1); and (3) SHBH's

executed summons to the Court reflecting a service date of May 24, 2024, (ECF No. 11, at 1).

On July 3, 2024, MSV returned Mr. Pierre's executed summons to the Court reflecting a service

date of June 20, 2024.   (ECF No. 17, at 1.)   No Defendant has made an appearance or filed a

responsive pleading, and the time to do so has expired.   *See* Fed. R. Civ. Pro. 12(a).[3]

On June 24, 2024, MSV requested that the Clerk of Court enter default as to SHBHW,

SHEBH, and SHBH.   (ECF No. 15.)   On June 25, 2024, the Clerk entered default as to those

---

[3] Federal Rule of Civil Procedure 12(a) provides in relevant part:

(a) Time to Serve a Responsive Pleading.

Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

(1) *In General.*

(A) A defendant must serve an answer:

(i) within 21 days after being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

Fed. R. Civ. P. 12(a)(1).

Defendants.  (ECF No. 16.)  On July 12, 2024, MSV requested that the Clerk of Court enter default as to Mr. Pierre.  (ECF No. 18.)  On July 23, 2024, the Clerk entered default as to Mr. Pierre.  (ECF No. 19.)

On September 27, 2024, MSV filed a Motion for Default Judgment against all Defendants (the "Motion").  (ECF No. 21.)  In the Motion, MSV seeks:  (1) a permanent injunction; (2) an order that Defendants file a report detailing how they have complied with the injunction; (3) an order that Defendants transfer to MSV domain names incorporating elements confusingly similar to MSV's SAFEHAVEN® Mark; (4) an order that Defendants destroy all materials bearing the SAFEHAVEN® Mark; and (5) a determination that the case qualifies as "exceptional" under 15 U.S.C. § 1117(a).  (ECF No. 21, at 3–4.)

## II.  Standard of Review

Federal Rule of Civil Procedure 55 governs default judgment.  Rule 55(a) provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  The party seeking entry of default judgment must then "apply to the court for a default judgment."  Fed. R. Civ. P. 55(b)(2).

A defendant in default "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."  *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  The clerk's entry of default does not itself warrant the Court's entry of default judgment.  *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 419 n.6 (4th Cir. 2010) (noting that "[e]ntry of default raises no protectable expectation that a default judgment

9

will follow") (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 785 (8th Cir. 1998)
(citation omitted)).   Rather, entry of default judgment is left to the discretion of the trial court.
*Payne ex. rel. Estate of Calzada v. Brake*, 439 F.3d 198, 203–04 (4th Cir. 2006) ("*Brake*").

      Before entry of default judgment, the Court must determine whether the allegations of the
complaint support the relief sought.   *See id.* at 203.   This is so because "[d]efault is a harsh
measure because it ignores the merits", *Bogopa Serv. Corp. v. Shulga*, No. 3:08cv365, 2009 WL
1628881 (MR), at *3 (W.D.N.C. June 10, 2009), and "the Fourth Circuit has a 'strong policy that
cases be decided on the merits[.]'" *State Employees' Credit Union v. Nat'l Auto Leasing, Inc.*,
No. 2:06cv663 (JBF), 2007 WL 1459301, at *1 (E.D. Va. May 14, 2007) (quoting *United States
v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).

      Prior to entering a default judgment, the Court must ensure that:   (1) it possesses
personal jurisdiction over the defaulting party; (2) it possesses subject-matter jurisdiction over
each of the claims; (3) the action is in the proper venue; and, (4) the defaulting party received
proper service of process.   *See Am. Auto. Assoc. v. AAA Auto Glass, LLC*, No. 1:14cv1072
(CMH/TCB), 2015 WL 3545927, at *1–2 (E.D. Va. June 3, 2015).   The Court must also
"determine whether the well-pleaded allegations in [Plaintiff's] complaint support the relief
sought in this action." *Ryan*, 253 F.3d at 780.

      A federal district court has subject matter jurisdiction over claims that arise under federal
law, *see* 28 U.S.C. § 1331.[4]   A court possesses personal jurisdiction over a defendant who has
sufficient minimum contacts with the forum state, who is subject to the personal jurisdiction of

---

[4] Section 1331 states:   "The district courts shall have original jurisdiction of all civil
actions arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. §
1331.

the courts of the forum state, and who has received effective service of process. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945); Fed. R. Civ. P. 4(k)(1)(A).[5]  Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).[6]

Pursuant to Federal Rule of Civil Procedure 4(e)(2)(C), an individual within a judicial district of the United States may be served by "delivering a copy of [the summons and the complaint] to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(C).  Rule 4(h)(1)(B) provides that service upon a business entity may be effected by serving "an officer, a managing or general agent, or any other agent authorized by

---

[5] Rule 4(k) states, in pertinent part:

> (k) TERRITORIAL LIMITS OF EFFECTIVE SERVICE.
>
> > (1) *In General.*   Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
> >
> > > (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where the district is located.

Fed. R. Civ. P. 4(k)(1)(A).

[6] 28 U.S.C. § 1391(b)(1) provides:

> (b) VENUE IN GENERAL.—A civil action may be brought in—
>
> > (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]

28 U.S.C. §1391(b)(1).

appointment or by law to receive service of process[.]"   Fed. R. Civ. P. 4(h)(1)(B); *see also* Va.

Code § 13.1-1018;7 Va. Code § 8.01-329.8

### III.   Analysis

MSV asserts that Defendants infringed its trademark in violation of 15 U.S.C. § 1114.

(ECF No. 1 ¶ 61.)   The well-pleaded allegations in MSV's Complaint, deemed admitted as a

result of default by Defendants, satisfy the requirements for trademark infringement.   Therefore,

the Court will order default judgment against Defendants.   For the reasons discussed below, the

Court will permanently enjoin Defendants from infringing on MSV's trademarks.

### A.   The Court Has Jurisdictional and Statutory Authority to Render Default Judgment Against Defendants

Each of the requirements for entering default judgment against Defendants has been

satisfied.   *See Am. Auto. Assoc.*, 2015 WL 3545927, at *1–2 (stating that prior to entering a

default judgment, a court must ensure that it has subject matter jurisdiction, personal jurisdiction

---

[7] Va. Code § 13.1-1018 provides that for corporations, partnerships, or associations, service may be effected by serving its registered agent.   Va. Code § 13.1-1018.

[8] Va. Code § 8.01-329 provides in relevant part:

A.   When the exercise of personal jurisdiction is authorized by this chapter . . . process or notice may be served on any agent of such person in the county or city in the Commonwealth in which that agent resides or on the Secretary of the Commonwealth of Virginia, hereinafter referred to in this section as the "Secretary," who, for this purpose, shall be deemed to be the statutory agent of such person.

B.   When service is to be made on the Secretary, the party or his agent or attorney seeking service shall file an affidavit with the court, stating either (i) that the person to be served is a nonresident or (ii) that, after exercising due diligence, the party seeking service has been unable to locate the person to be served.   In either case, such affidavit shall set forth the last known address of the person to be served.

Va. Code § 8.01-329.

over the defaulting party, the action is in the proper venue, and the defaulting party received proper service of process).

### 1.   Subject Matter Jurisdiction

First, the Court possesses subject matter jurisdiction because MSV's claims arise under the Lanham Act, 15 U.S.C. § 1051 *et seq.* *See* 28 U.S.C. § 1331.

### 2.   Personal Jurisdiction

Second, the Court has personal jurisdiction over SHEBH, SHBHW, SHBH, and Mr. Pierre. "Pursuant to [Federal Rule of Civil Procedure] 4(k)(1)(A), a federal court assessing such a jurisdictional issue borrows and applies the applicable long-arm statute and governing principles from the forum state." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). "In order for a district court to exercise personal jurisdiction over a defendant pursuant to a state long-arm statute, two requirements must be satisfied." *Id.* "First, the forum state's long-arm statute must authorize the exercise of such personal jurisdiction." *Id.* "Second, if that authorization exists, the Due Process Clause of the Fourteenth Amendment requires that the defendants have sufficient minimum contacts with the forum state." *Id.*

#### a.   Standard of Review

"Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (internal quotation marks omitted). Accordingly, the inquiry becomes whether the defendants maintain sufficient minimum contacts with the forum state so as

13

not to offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

"The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). "If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction . . . .[I]f the defendant's contacts with the State are not also the basis for suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the State." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & nn.8–9 (1984)).

The United States Court of Appeals for the Fourth Circuit has adopted a three-part test to determine whether specific personal jurisdiction exists. *Reynolds Foil, Inc. v. Pai*, No. 3:09cv657, 2010 WL 1225620, at *2 (E.D. Va. Mar. 25, 2010). The Court must consider: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and[,] (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

With respect to the first factor, "no clear formula [exists] for determining what constitutes 'purposeful availment.'" *Reynolds Foil, Inc.*, 2010 WL 1225620, at *2. The Court, however, may consider whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state

14

to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business transactions; and, whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citations omitted). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Id.*

"The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278–79 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414). The third prong of the specific jurisdiction test "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, the court may consider: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and, (5) the interests of the states in furthering substantive social policies." *Id.* (citing *Burger King*, 471 U.S. at 477).

### b.    Analysis

As to the first factor, Defendants purposefully availed themselves of the privilege of conducting activities in Virginia. The Safe Haven Health website, which "does not differentiate

15

between or among the five or more entities [Mr. Pierre] formed using the Safe Haven marks"—
including SHEBH, SHBHW, and SHBH—"uses the Safe Haven marks interchangeably for the
benefit of all [Mr. Pierre's] businesses together."  (ECF No. 1 ¶ 34.)   The Safe Haven Health
LinkedIn profile, which advertises itself as "a virtual mental health clinic aiming to increase
access to effective and efficient mental healthcare from the comfort of your home", states that it
"serve[s] Maryland, Colorado, Florida, Vermont, Tennessee, *Virginia*, Oregon, Connecticut, and
Delaware residents."  (ECF No. 1 ¶ 36 (emphasis added).)   Further, the Safe Haven Health
LinkedIn profile contains a link to a website which advertises mental health services and states
that the company is "'[t]rusted by hundreds of clients nationwide,'" and provides services in
Virginia.[9]  (ECF No. 1 ¶¶ 36–38.)

As to the second factor, Defendants' contacts with Virginia form the basis of the suit.
Defendants' infringement of MSV's SAFEHAVEN® Mark occurred via a Safe Haven Health
LinkedIn profile and website, both of which explicitly advertise mental health services to
Virginia residents.   (ECF No. 1 ¶¶ 36, 38.)

As to the third factor, Virginia is an appropriate forum.   The burden on Defendants of
litigating in Virginia is low because they do business in Virginia.   Virginia has an interest in
adjudicating the dispute because a Virginia business has suffered harm in the form of trademark

---

[9] "Defendant Pierre and the entity Defendants previously utilized the Safe Haven marks"
on other websites, including http://www.safehavenhealth.life and
http://www.safehavenbhw.com, and http://safehavenbh.com.  (ECF No. 1 ¶¶ 41, 44, 47.)
These websites "generally contained content similar to the content of the safehavenhealth.co
website, including the pervasive use of the Safe Haven marks."  (ECF No. 1 ¶¶ 41, 44, 49.)
Both the safehavenhealth.life website and the safehavenbhw website list "a contact address of
7901 4th St. N., Suite 300, St. Petersburg, Florida 33702", which "is listed with the Florida
Division of Corporations as the principal address and mailing address of" SHBHW and SHBH.
(ECF No. 1 ¶ 43.)   "During at least some time during the existence of the safehavenbh.com
website, the website listed the specific entity as Defendant SHEBH."  (ECF No. 1 ¶ 50.)

infringement.   As a Virginia business with its principal place of business in Virginia, the plaintiff's interest in obtaining convenient and effective relief supports the appropriateness of the forum.

Thus, the Court finds that MSV has established a prima facie case that this Court has personal jurisdiction over Defendants.  *See Patel v. Patel*, No. 1:15cv598 (TSE), 2017 WL 5198151, at *3 (E.D. Va. July 31, 2017) (in the context of a motion for default judgment, a plaintiff has the burden to establish a prima facie case that the court has personal jurisdiction over the defaulting parties) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993)).

### 3.    Venue

Third, venue is proper in this Court under 28 U.S.C. § 1391(b).   "A civil action may be brought in . . . (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[;] . . . or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."   28 U.S.C. § 1391(b).

As to the first basis, no Defendant resides in Virginia.   (ECF No. 1 ¶¶ 3–6.)   As to the second basis, MSV has not alleged facts showing that "a substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District of Virginia.   Thus, because "there is no district in which [the] action may otherwise be brought", venue is proper in the Eastern District of Virginia because Defendants are subject to this Court's personal jurisdiction.

17

4.    **Service of Process**

Fourth, each Defendant was properly served pursuant to Federal Rule of Civil Procedure 4, Virginia Code § 13.1-1018, and Virginia Code § 8.01-296.   On May 15, 2024, MSV served a copy of the Summons and Complaint on SHBHW's registered agent.   (ECF No. 9, at 1.)   On May 22, 2024, MSV served a copy of the Summons and Complaint on SHEBH's registered agent.   (ECF No. 10, at 1.)   On May 24, 2024, MSV served a copy of the Summons and Complaint on SHBH's registered agent.   (ECF No. 11, at 1.)   On June 20, 2024, MSV personally served a copy of the Summons and Complaint on Mr. Pierre.   (ECF No. 17, at 1.)

B.    **MSV's Allegations, Deemed Admitted, Establish that Defendants Infringed on MSV's Trademark and Entitle It to Relief**

MSV demonstrates entitlement to relief based on the well-pleaded facts in the Complaint. MSV alleges that (1) it successfully registered the SAFEHAVEN® Mark with the USPTO, (ECF No. 1 ¶¶ 10–12); and (2) Defendants used an imitation of the SAFEHAVEN® Mark on several different websites, (ECF No. 1 ¶¶ 33–51).   These allegations sufficiently support MSV's claim that Defendants infringed on its trademark in violation of 15 U.S.C. § 1114.[10]

_____

[10] 15 U.S.C. § 1114 provides, in relevant part:

(1) Any person who shall, without the consent of the registrant—

> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .

> *        *        *

> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1).

"The Lanham Act protects trademark registrants from 'any reproduction, counterfeit, copy, or colorable imitation of a registered mark' by allowing the registrant to commence a civil action against trademark infringers for disgorgement of profits or other damages." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 660 (4th Cir. 2018) (quoting 15 U.S.C. § 1114(1)). "To demonstrate trademark infringement, a plaintiff must show both (1) 'that it owns a valid and protectable mark,' and (2) 'that the defendant's use of a reproduction counterfeit, or colorable imitation of that mark creates a likelihood of confusion.'" *Id.* (quoting *CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 267 (4th Cir. 2006) (some internal quotation marks omitted)).

Here, MSV has established that it owns the SAFEHAVEN® trademark by providing its federal registration of the mark under U.S. Reg. No. 6640109.  (ECF No. 1 ¶ 10.)  A search of the registration number on the USPTO's website indicates that MSV is the owner of the SAFEHAVEN® Mark, which was registered on February 8, 2022.[11]  (ECF No. 1 ¶ 12.)  Thus, MSV has proven that it owns a valid trademark for the SAFEHAVEN® Mark and has the right to sue for trademark infringement.

Next, MSV has shown that Defendants used a colorable imitation of the SAFEHAVEN® Mark that created a likelihood of confusion.  "Likelihood of confusion exists if 'the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question.'" *First Care, P.C.*, 434 F.3d at 267 (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 125 (2004)).  Defendants SHEBH, SHBHW, SHBH, and Mr. Pierre each filed or signed applications to register marks incorporating

---

[11] United States Patent and Trademark Office, https://tsdr.uspto.gov/#caseNumber=88923221&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last visited June 23, 2025).

the words "SAFE HAVEN." (ECF No. 1 ¶¶ 27–31.) In each of the four applications, the

USPTO refused to register the mark. (ECF No. 1 ¶¶ 27–31.) In two such instances, the

USPTO "issued a non-final Office Action refusing to register the mark" for several reasons,

including "likelihood of confusion with MSV's SAFEHAVEN® Mark." (ECF No. 1 ¶¶ 28, 31.)

Despite Defendants' unsuccessful efforts to register their marks, "Defendants each

continue to use their Safe Haven marks in one or more channels in commerce." (ECF No. 1

¶ 33.) "For example, [Mr.] Pierre lists his current occupation on LinkedIn as 'Founder and

Owner' of 'Safe Haven Health' from July 2021 to the present." (ECF No. 1 ¶ 34.) Mr. Pierre's

LinkedIn profile links to a LinkedIn profile for "Safe Haven Health." (ECF No. 1 ¶ 35.) The

LinkedIn profile for "Safe Haven Health" "does not differentiate between or among the various

entities that [Mr.] Pierre formed and operates using the Safe Haven marks", contains the

following description:

> Safe Haven Health is a virtual mental health clinic aiming to increase access to
> effective and efficient mental healthcare from the comfort of your home. Safe
> Haven addresses several mental health concerns, including ADHD, depression,
> bipolar disorder, and anxiety.
>
> We serve Maryland, Colorado, Florida, Vermont, Tennessee, Virginia, Oregon,
> Connecticut, and Delaware residents.

(ECF No. 1 ¶¶ 35–36.)

"Defendant Pierre and the entity Defendants previously utilized the Safe Haven marks"

on other websites, including http://www.safehavenhealth.life and

http://www.safehavenbhw.com, and http://safehavenebh.com. (ECF No. 1 ¶¶ 41, 44, 47.) Both

the safehavenhealth.life website and the safehavenbhw website list "a contact address of 7901

4th St. N., Suite 300, St. Petersburg, Florida 33702", which "is listed with the Florida Division of

Corporations as the principal address and mailing address of" SHBHW and SHBH. (ECF No. 1

¶ 43.)   "During at least some time during the existence of the safehavenbh.com website, the website listed the specific entity as Defendant SHEBH."   (ECF No. 1 ¶ 50.)

MSV asserts that Defendants' use of their Safe Haven marks creates a likelihood of confusion because Defendants purport to "offer[] overlapping mental health services" with the mental health services provided by MSV in conjunction with its SafeHaven program.[12]   (ECF No. 1 ¶ 14.)   The absence of any response from Defendants to this lawsuit results in its failure to meet its burden, thereby solidifying the facts alleged.   Accordingly, the Court concludes that Defendants infringed on MSV's trademark.

### C.      MSV's Allegations Have Established Its Right to Receive Injunctive Relief

The Lanham Act provides that a court may grant injunctive relief to prevent the infringement of copyrights.   *See* 15 U.S.C. § 1116(a) ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions . . . to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office.").   To obtain a permanent injunction, plaintiffs must show:

(1) that it has suffered an irreparable injury;

(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4) that the public interest would not be disserved by a permanent injunction.

*Overstock.com, Inc. v. Visocky*, No. 1:17cv1331 (TCB), 2018 WL 5075511, at *9–10 (E.D. Va. Aug. 23, 2018), *report and recommendation adopted*, No. 1:17cv1331 (LMB), 2018 WL

---

[12] "MSV applied to register the SAFEHAVEN® Mark for use in connection with its SafeHaven program, which MSV created in 2020 to address career fatigue and behavioral health issues among physicians and physician assistants."   (ECF No. 1 ¶ 13.)

5046673 (E.D. Va. Oct. 17, 2018) (quoting *Christopher Phelps & Assocs., LLC v. Galloway*, 492

F.3d 532, 543 (4th Cir. 2007) (further citations omitted)).   "[I]n the context of trademark

infringement, '[a] finding of irreparable injury ordinarily follows when a likelihood of confusion

or possible risk to reputation appears.'"   *Overstock.com*, 2018 WL 5075511, at *10 (quoting

*Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 938 (4th Cir. 1995)).

        Because MSV has established that Defendants infringed its trademark by using the Safe

Haven mark on LinkedIn and other websites, MSV is entitled to a rebuttable presumption of

irreparable harm.   15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled

to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this

subsection in the case of a motion for a permanent injunction").

        MSV further claims that no remedy at law could adequately compensate it.   (ECF No. 1

¶ 63.)   Courts have found that when a plaintiff has effected personal service on a defendant, and

the defendant "fail[s] to respond in any way[,] . . . [t]his lack of an appropriate response

demonstrates that there is a near certainty of continuing counterfeit trademark infringement[.]"

*Millennium Funding, Inc. v. Doe*, No. 1:21cv282 (TCB), 2021 WL 5217018, at *14 (E.D. Va.

Oct. 15, 2021), *report and recommendation adopted*, 1:21cv282 (RDA), 2022 WL 1156579

(E.D. Va. Jan. 20, 2022).   Further, money damages are an inadequate remedy because they

would not remedy Defendants' harm to MSV's SAFEHAVEN® Mark.   *Am. Farm Bureau Fed.*

*v. Va. Farm Bureau Mutual*, No. 1:24cv213 (LRV), 2024 WL 3838424, at *8 (E.D. Va. July 9,

2024), *report and recommendation adopted*, No. 1:24cv213 (PTG), 2024 WL 3834884 (E.D. Va.

Aug. 15, 2024).   Given Defendants' failure to respond to this lawsuit, the Court concludes that

MSV lacks an adequate remedy at law.

The balance of hardships weighs in MSV's favor.   The only hardship Defendants would suffer from a permanent injunction "would be the requirement to follow clearly established trademark . . .   law." *Overstock.com*, 2018 WL 5075511, at *11.   In contrast, in the absence of injunctive relief, MSV could face continued infringement of its rights under the Lanham Act.

Finally, public interest favors a permanent injunction.   An injunction would prevent the public from being confused by Defendants' use of a colorable imitation of the SAFEHAVEN® Mark.   An injunction would also maintain the integrity of MSV's SAFEHAVEN® Mark. *Overstock.com*, 2018 WL 5075511, at *11.

Accordingly, the Court concludes that the issuing of a permanent injunction against Defendants is the best means to prevent future harm to MSV.   Specifically, the Court will enjoin Defendants, their employees and affiliates, and any respective agents, partners, officers, diretors, members, managers, shareholders, principals, subsidiaries, and all persons in active concert or participation with any of them, from (a) selling, offering for sale, advertising, promoting, distributing, marketing, or exploiting in any other way the Safe Haven marks or any other mark confusingly similar to MSV's SAFEHAVEN® Mark in connection with wellness and mental health services; and (b) committing any other act calculated or likely to cause the public to believe that Defendants and MSV are in any manner connected, affiliated or associated with one another or otherwise competing unfairly with MSV.

### D.    MSV's Other Requests for Relief

#### 1.    Report Certifying Compliance with Injunction

In addition to a permanent injunction, MSV requests that the Court "order Defendants to file with the Court and serve upon MSV, within thirty (30) days after entry of final judgment, a report in writing and under oath setting forth in detail the manner and form by which Defendants

have complied with the injunction pursuant to 15 U.S.C. § 1116(a)[.]"   (ECF No. 21, at 3.)   The
Lanham Act provides that "[a]ny such injunction may include a provision directing the defendant
to file with the court and serve on the plaintiff within thirty days after the service on the
defendant of such injunction, or such extended time period as the court may direct, a report in
writing under oath setting forth in detail the manner and form in which the defendant has
complied with the injunction."   15 U.S.C. § 1116(a).   Because the Court will issue a permanent
injunction, this additional relief is authorized and will be granted.

### 2.   Transfer of Domain Names

MSV further requests that the Court "order Defendants to transfer to MSV the
www.safehaven.co, www.safehavenhealth.life, and www.safehavenbhw.com domain names, and
any other domain names incorporating elements confusingly similar to MSV's SAFEHAVEN®
Mark."   (ECF No. 21, at 3.)   Courts in this district have granted similar relief in trademark
infringement cases.   *See, e.g.*, *Microsoft Corp. v. Does*, No. 1:22cv607 (WEF), 2024 WL
1708328, at *10 (E.D. Va. Jan. 10, 2024), *report and recommendation adopted*, No. 1:22cv607
(LMB), 2024 WL 1708323 (E.D. Va. Jan. 30, 2024) (granting plaintiff's requested relief of
"permanently transferring ownership to [plaintiff] of known malicious [] domains identified in
the Court's prior injunction order").   Thus, this additional relief is authorized and will be
granted.

### 3.   Destruction of Materials Bearing the Registered Mark

MSV further requests that the Court "order Defendants to destroy all labels, signs, prints,
packages, and advertisements that bear the Safe Haven marks, and all means of making the
same[.]"   (ECF No. 21, at 4.)   The Lanham Act provides that in an action for trademark
infringement, "the court may order that all labels, signs, prints, packages, wrappers, receptacles,

24

and advertisements in the possession of the defendant, bearing the registered mark . . . shall be delivered up and destroyed."   15 U.S.C. § 1118.   Thus, this additional relief is authorized and will be granted.

### 4.   Determination that this Case Qualifies as "Exceptional"

MSV also requests that the Court "determine that this case qualifies as 'exceptional' under 15 U.S.C. § 1117(a)."   (ECF No. 21, at 4.)   "While costs are awarded as a matter of course for a violation of the Lanham Act, the Court may award attorney's fees to the prevailing party only 'in exceptional cases.'"   *Landstar Sys., Inc. v. Landstar Onway, Inc.*, No. 1:22cv1417 (WEF), 2023 WL 6453482, at *15 (E.D. Va. Aug. 15, 2023).   In its Motion, MSV notes its intention "to move for an award of its attorney's fees with supporting detail."   (ECF No. 21, at 4.)   The Court retains jurisdiction over any matter pertaining to this judgment and reserves any determination regarding whether this cases qualifies as "exceptional" under 15 U.S.C. § 1117(a) until the appropriate time.

### IV.   Conclusion

For the foregoing reasons, the Court will grant the Motion.   (ECF No. 21.)   First, the Court will order that default judgment be entered against Defendants.   Second, the Court will permanently enjoin Defendants from further violating MSV's trademarks, including the SAFEHAVEN® Mark.   Third, the Court will order Defendants to file with the Court and serve on MSV, no later than thirty (30) days from the entry of this Memorandum Opinion and related Final Order, a report setting forth in detail the manner by which Defendants have complied with the injunction.   Fourth, the Court will order Defendants to transfer to MSV the specified domain names.   Fifth, the Court will order Defendants to destroy all labels, signs, prints, packages, and

advertisements that bear the Safe Haven marks.

Sixth and finally, the Court will retain jurisdiction over any matter pertaining to this judgment. The Court will order MSV to file any motion for fees, accompanied by briefing on whether this case constitutes an exceptional case, no later than two weeks from the date of entry of this Order.

An appropriate Order shall issue.

Date: 7/8/25
Richmond, Virginia

M. Hannah Lauck
United States District Judge

26